SC

**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Ron Zachary Pettit,                             )      No. CV 11-2139-PHX-DGC (JFM)
                                                )
                    Plaintiff,                  )      **ORDER**
                                                )
vs.                                             )
                                                )
Charles L. Ryan, et al.,                        )
                                                )
                    Defendants.                 )
_____)

Plaintiff Ron Zachary Pettit, who is confined in the Arizona State Prison Complex-Eyman, Special Management Unit I, in Florence, Arizona, has filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*. (Doc. 1, 8.)  Plaintiff has also filed two motions for appointment of counsel.  (Doc. 10, 11.)  The Court will order Defendants Smith, Morrow, Lague, and Mueller to answer Count I of the Complaint and will dismiss the remaining claims and Defendants without prejudice.  The Court will deny the motions.

**I.      Application to Proceed *In Forma Pauperis* and Filing Fee**

Plaintiff's Application to Proceed *In Forma Pauperis* will be granted.  28 U.S.C. § 1915(a).  Plaintiff must pay the statutory filing fee of $350.00.  28 U.S.C. § 1915(b)(1).  The Court will not assess an initial partial filing fee.  28 U.S.C. § 1915(b)(1).  The statutory fee will be collected monthly in payments of 20% of the previous month's income each time the amount in the account exceeds $10.00.  28 U.S.C. § 1915(b)(2).  The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees

**TERMPSREF**

1 according to the statutory formula.

2 **II.     Statutory Screening of Prisoner Complaints**

3          The Court is required to screen complaints brought by prisoners seeking relief against

4 a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C.

5 § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised

6 claims that are legally frivolous or malicious, that fail to state a claim upon which relief may

7 be granted, or that seek monetary relief from a defendant who is immune from such relief.

8 28 U.S.C. § 1915A(b)(1), (2).

9          A pleading must contain a "short and plain statement of the claim *showing* that the

10 pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not

11 demand detailed factual allegations, "it demands more than an unadorned, the-defendant-

12 unlawfully-harmed-me accusation."   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

13 "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

14 statements, do not suffice."  Id.

15          "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

16 claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly,

17 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content

18 that allows the court to draw the reasonable inference that the defendant is liable for the

19 misconduct alleged."  Id.  "Determining whether a complaint states a plausible claim for

20 relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

21 experience and common sense."  Id. at 1950.  Thus, although a plaintiff's specific factual

22 allegations may be consistent with a constitutional claim, a court must assess whether there

23 are other "more likely explanations" for a defendant's conduct.  Id. at 1951.

24          But as the United States Court of Appeals for the Ninth Circuit has instructed, courts

25 must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th

26 Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards

27 than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89,

28 94 (2007) (*per curiam*)).

1

**III.    Complaint**

2        Plaintiff alleges two counts for excessive force and denial of constitutionally adequate

3    medical care.  Plaintiff sues the following current or former employees of the Arizona

4    Department of Corrections (ADC): Director Charles L. Ryan; Corrections Officer (CO) H.

5    Smith; CO IIs Mueller and Lague; CO IIIs McClellan and Pinson; Sergeant Morrow; Captain

6    Scott; Deputy Warden Curran; Nurse Nelson; ASPC Eyman Complex Facility Health

7    Administrator (FHA); and ASPC Eyman Complex Health Services Regional Operations

8    Director.

9        Plaintiff alleges the following in his Complaint: Plaintiff is considered a "high risk

10    inmate" and all movements out of his cell requires the supervision by a sergeant or higher,

11    a minimum of two correctional officers as escorts, and use of lead chain and shackles, with

12    movements video-recorded.

13        On April 15, 2011, Plaintiff was escorted from the shower back to his cell by Sergeant

14    Morrow and COs Mueller, Lague, and Smith.  During the return, Smith became verbally

15    abusive towards Plaintiff and Plaintiff responded in kind.  Smith stopped the verbal abuse

16    while Plaintiff was locked in his cell, but resumed it as he instructed Plaintiff to back up to

17    the cell door, ostensibly to remove the shackles through the trap door.  Plaintiff's shackled

18    wrists were extended through the trap door, which was located approximately three and half

19    feet above the floor.  While Plaintiff was so-positioned, Smith grabbed Plaintiff's hands and

20    arms and pulled them through the trap door and against the upper edge of the trap door.  He

21    then "violently yanked" the lead chain down while applying backward pressure. (Doc. 1 at

22    3.) This forced Plaintiff into a position between kneeling and standing with both arms fully

23    extended through the trap door and Plaintiff's shoulders flush against the cell door with most

24    of his weight on his shoulders and arm sockets.  Smith yanked Plaintiff's arms up and down

25    for one to two minutes, while Plaintiff yelled.  Mueller, Lague, and Morrow watched without

26    intervening.  Plaintiff's neck, shoulders, right arm, both wrists, and lower back were injured.

27        Plaintiff asked Morrow for medical assistance after the incident for "injuries" to his

28    neck, shoulders, arm sockets, right arm, both wrists, and lower back, but Morrow

"categorically" refused.  (Id. at 4.)  Thirty minutes later, Plaintiff saw Nurse Nelson distributing medication and sought her assistance.  Nelson told Plaintiff that she could not assist him without authorization from Morrow.  Plaintiff saw Nelson talk to Morrow and leave.

Plaintiff requested medical assistance from numerous COs that day and the next, and was told that Morrow had to authorize it.  On April 17, 2011, Plaintiff submitted a Health Needs Request (HNR) to medical, but received no response.  Plaintiff repeated his request numerous times without success.  On April 20, 2011, Plaintiff submitted an informal complaint to Defendant McClellan, who did not respond.  Plaintiff then submitted a formal grievance to the FHA, which Defendant Pinson returned unprocessed for failure to submit a copy of McClellan's response.  Pinson also returned unprocessed Plaintiff's grievance appeal to the Health Services Regional Operations Director.  Plaintiff contends that Pinson failed to comply with prison grievance procedures by returning his grievance and grievance appeal unprocessed.

**IV.   Failure to State a Claim**

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right.  Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989).  In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant.  Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

**A.   Ryan, Curran, and Scott**

Plaintiff sues Director Ryan, Deputy Warden Curran, and Captain Scott.  Although each may be sued for constitutional violations, Plaintiff fails to state a claim against any of them.  "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."  Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).  For an individual to be liable in his official capacity, a plaintiff

must allege that the official acted as a result of a policy, practice, or custom.  See Cortez v. County of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2001) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)).  Further, there is no *respondeat superior* liability under § 1983, so a defendant's position as the supervisor of someone who allegedly violated a plaintiff's constitutional rights does not make him liable.  Monell, 436 U.S. at 691; Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  A supervisor in his individual capacity "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor, 880 F.2d at 1045.

The only basis for liability asserted by Plaintiff against Ryan, Curran, and Scott is *respondeat superior*.  As stated above, *respondeat superior* does not constitute a ground for liability under § 1983.  Plaintiff has not otherwise alleged facts to support that any of these Defendants enacted or enforced a policy, custom, or practice that resulted in the denial of Plaintiff's constitutional rights or facts to support that any of these Defendants directly violated his constitutional rights or knew of violations but failed to act.  Accordingly, these Defendants will be dismissed.

### B.    FHA, Regional Operations Director, McClellan, and Pinson

Plaintiff sues the Eyman Complex FHA and Health Services Regional Operations Director, whom he has not identified by name, CO IIIs McClellan and Pinson.  Plaintiff alleges that McClellan failed to respond to his informal grievance.  He alleges that his grievance and grievance appeal to the FHA and the Operations Director were returned to him unprocessed by Pinson in non-compliance with prison grievance procedures.

### 1.    FHA and Operations Director

Rule 10(a) of the Federal Rules of Civil Procedure requires the plaintiff to include the names of the parties in the action.  As a practical matter, it is impossible in most instances for the United States Marshal or his designee to serve a summons and complaint or amended complaint upon an anonymous defendant.  Where identity of a defendant is unknown prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery

to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.  <u>Wakefield v. Thompson</u>, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir. 1980)).

In this case, Plaintiff fails to allege facts to support that either the FHA or the Regional Operations Director in any way violated Plaintiff's constitutional rights.  Indeed, Plaintiff acknowledges that his efforts to contact the FHA and the Regional Operations Director were returned to him unprocessed by Pinson.  Because Plaintiff fails to state a claim against the FHA or the Regional Operations Director, both of these Defendants will be dismissed.

**2.    McClellan and Pinson**

Plaintiff alleges that McClellan failed to respond to his informal grievance. He alleges that Pinson returned his grievance and grievance appeal to the FHA and Operations Director unprocessed and not in compliance prison grievance procedures.  Plaintiff characterizes Pinson's acts as an attempt to deny him access to the courts.

To the extent that Plaintiff alleges that McClellan or Pinson failed to comply with prison procedures, he fails to state a claim.  Non-compliance with prison procedures, absent more, does not rise to the level of a constitutional violation.  Accordingly, Plaintiff fails to state a claim against McClellan or Pinson on that basis.

Plaintiff otherwise asserts that Pinson attempted to deny him access to the courts.  The right of meaningful access to the courts prohibits state officials from actively interfering with an inmate's attempt to prepare or file legal documents.  <u>Lewis v. Casey</u>, 518 U.S. 343, 350 (1996).  That right, however, only encompasses the ability to bring petitions or complaints to court and not to discover or even effectively litigate such claims once filed with a court.  <u>Id.</u> at 354; <u>see also</u> <u>Cornett v. Donovan</u>, 51 F.3d 894, 899 (9th Cir. 1995) ("The right of access is designed to ensure that a habeas petition or civil rights complaint of a person in state custody will reach a court for consideration.")  The right "guarantees no particular methodology but rather, the conferral of a capability – the capability of bringing

contemplated challenges to sentences or conditions of confinement before the courts."
Lewis, 518 U.S. at 356.  The plaintiff must allege facts to support that he was actually
injured.  An "actual injury" is "actual prejudice with respect to contemplated or existing
litigation, such as the inability to meet a filing deadline or present a claim." Lewis, 518 U.S.
at 348.  In other words, a plaintiff must allege facts to support that a defendant's conduct
prevented him from bringing to court a non-frivolous claim that he wished to present. Id. at
351-53.  A plaintiff "must identify a nonfrivolous, arguable underlying claim," and this
underlying claim "must be described in the complaint." Christopher v. Harbury, 536 U.S.
403, 414-15 (2002).

Plaintiff fails to allege facts to support that he has been actually been injured with
respect to any pending or prospective litigation.  Clearly, Plaintiff was able to file this action.
For that reason, Plaintiff fails to state a claim against Pinson for denial of access to the courts
and that portion of Count II will be dismissed.

### C.    Medical Care

In Count II, Plaintiff alleges that he was denied constitutionally adequate medical care
after Smith used excessive force against him and injured him.  Not every claim by a prisoner
relating to inadequate medical treatment states a violation of the Eighth or Fourteenth
Amendment.  To state a § 1983 medical claim, a plaintiff must show that the defendants
acted with "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091,
1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  A plaintiff must
show (1) a "serious medical need" by demonstrating that failure to treat the condition could
result in further significant injury or the unnecessary and wanton infliction of pain and (2) the
defendant's response was deliberately indifferent.   Jett, 439 F.3d at 1096 (quotations
omitted).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051,
1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know
of and disregard an excessive risk to inmate health; "the official must both be aware of facts
from which the inference could be drawn that a substantial risk of serious harm exists, and

1  he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Deliberate

2  indifference in the medical context may be shown by a purposeful act or failure to respond

3  to a prisoner's pain or possible medical need and harm caused by the indifference.  Jett, 439

4  F.3d at 1096.  Deliberate indifference may also be shown when a prison official intentionally

5  denies, delays, or interferes with medical treatment or by the way prison doctors respond to

6  the prisoner's medical needs.  Estelle, 429 U.S. at 104-05; Jett, 439 F.3d at 1096.

7         Deliberate indifference is a higher standard than negligence or lack of ordinary due

8  care for the prisoner's safety.  Farmer, 511 U.S. at 835.  "Neither negligence nor gross

9  negligence will constitute deliberate indifference." Clement v. California Dep't of Corr., 220

10 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); see also Broughton v. Cutter Labs., 622 F.2d 458,

11 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice"

12 do not support a claim under § 1983).  "A difference of opinion does not amount to deliberate

13 indifference to [a plaintiff's] serious medical needs."  Sanchez v. Vild, 891 F.2d 240, 242

14 (9th Cir. 1989).  A mere delay in medical care, without more, is insufficient to state a claim

15 against prison officials for deliberate indifference.  See Shapley v. Nevada Bd. of State

16 Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  The indifference must be substantial.

17 The action must rise to a level of "unnecessary and wanton infliction of pain." Estelle, 429

18 U.S. at 105.

19        Plaintiff alleges that his neck, shoulders, right arm, wrists, and lower back were

20 injured in the April 11 incident and that the failure to receive treatment has resulted in "long

21 term complications."  (Doc. 1 at 4.)  Plaintiff fails to allege facts to support that the injuries

22 rose to the level of a serious medical need.  He also fails to describe any resulting

23 complications.

24        Plaintiff also fails to allege facts to support that Nelson or Morrow acted with

25 deliberate indifference.  Plaintiff alleges that he was considered a high risk inmate and that

26 Nelson informed him that she could not assist him without Morrow's authorization, which

27 Morrow apparently denied.  Plaintiff fails to allege facts to support that either Nelson or

28 Morrow knew of facts giving rise to an inference that Plaintiff had a serious medical need

– and that they drew such inference – but nevertheless failed to provide medical treatment. For these reasons, Plaintiff fails to state a claim for deliberate indifference to his serious medical needs and this claim will be dismissed.

**V.      Claim for Which an Answer Will be Required**

In Count I, Plaintiff alleges that Smith used excessive force against him for the purpose of causing him harm and that Morrow, Mueller, and Lague failed to intervene to stop that use of force. Plaintiff sufficiently states a claim for excessive use of force in Count I against Smith, Morrow, Lague, and Mueller, and they will be required to respond to the Complaint.

**VI.      Motions for Appointment of Counsel**

As noted above, Plaintiff has filed two motions for appointment of counsel. (Doc. 10, 11.) Plaintiff seeks the appointment of counsel because of his imprisonment and limited access to legal resources will make it difficult for him to litigate this case, he is indigent, and he has been unable to retain counsel. Counsel is only appointed in a civil rights action in "exceptional circumstances." Agyeman v. Corrections Corp. of America, 390 F.3d 1101, 1103 (9th Cir. 2004); Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991). "A finding of exceptional circumstances requires an evaluation of both 'the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved.'" Wilborn, 789 F.2d at 1331; see Agyeman, 390 F.3d at 1103; Terrell, 935 F.2d at 1017. This case does not present exceptional circumstances warranting the appointment of counsel. Accordingly, Plaintiff's requests for the appointment of counsel will be denied.

**VII.      Warnings**

**A.      Release**

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

1

**B.     Address Changes**

2

Plaintiff must file and serve a notice of a change of address in accordance with Rule

3

83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other

4

relief with a notice of change of address.  Failure to comply may result in dismissal of this

5

action.

6

**C.     Copies**

7

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy

8

of every document that he files.  Fed. R. Civ. P. 5(a).  Each filing must include a certificate

9

stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also, Plaintiff must submit

10

an additional copy of every filing for use by the Court.  See LRCiv 5.4.  Failure to comply

11

may result in the filing being stricken without further notice to Plaintiff.

12

**D.     Possible Dismissal**

13

If Plaintiff fails to timely comply with every provision of this Order, including these

14

warnings, the Court may dismiss this action without further notice.  See Ferdik v. Bonzelet,

15

963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to

16

comply with any order of the Court).

17

**IT IS ORDERED:**

18

(1)     Plaintiff's Application to Proceed *In Forma Pauperis* is **granted**.  (Doc. 8.)

19

(2)     As required by the accompanying Order to the appropriate government agency,

20

Plaintiff must pay the $350.00 filing fee and is not assessed an initial partial filing fee.

21

(3)     Count II and Defendants Ryan, Curran, Scott, McClellan, Nelson, Pinson, and

22

the Eyman Complex Facility Health Administrator and Health Services Regional Operations

23

Director are **dismissed** without prejudice.

24

(4)     Defendants Smith, Morrow, Lague, and Mueller must answer Count I.

25

(5)     The Clerk of Court must send Plaintiff a service packet including the

26

Complaint (Doc. 1), this Order, and both summons and request for waiver forms for

27

Defendants Smith, Morrow, Lague, and Mueller.

28

(6)     Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(8)     The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(9)     The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.  **The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

(a)  personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b)  within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and

---

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10)   **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(11)   Defendant must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12)   Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13)   Plaintiff's motions for appointment of counsel are **denied**. (Doc. 10, 11.)

(14)   This matter is referred to Magistrate Judge James F. Metcalf pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 31st day of January, 2012.

David G. Campbell
United States District Judge